936 So.2d 79 (2006)
STATE of Louisiana in the Interest of A.T., T.A., & J.A.
No. 2006-CJ-0501.
Supreme Court of Louisiana.
July 6, 2006.
Rehearing Denied September 1, 2006.
*80 Theresa A. Beckler, Metairie, for Applicant.
Scott M. Perrilloux, District Attorney; Bethea Law Firm, Cynthia A. Bethea; Rhorer Law Firm, John D. Allen, Kerry D. Carpenter, Denham Springs; James D. Riddle, for Respondent.
VICTORY, J.
We granted a writ application to determine whether the State of Louisiana, Department of Social Services, Office of Community Services ("OCS") has an obligation to make reasonable efforts to assist a parent in removing the impediments to reunification with her children before parental rights can be terminated under La. Ch.C. art. 1015(5). After reviewing the record and the applicable law, we hold that in this case, OCS has an obligation to make reasonable efforts to assist the parent in finding suitable housing before it may seek to terminate parental rights under La. Ch. C. art. 1015(5). Because the record indicates that OCS did not do so in this case, the trial court erred in terminating parental rights.

FACTS AND PROCEDURAL HISTORY
On October 30, 2002, Ms. A informed OCS that she could no longer care for her three children, ages 15, 7, and 10 months. At that time Ms. A and her husband were separating, she was being evicted from their rented trailer, and the electricity was turned off. She had little food at that time and no transportation. She also reported that Mr. A had a problem with alcohol abuse and that they had been involved in a number of domestic disputes. Accordingly, OCS sought an Instanter Order from the 21st Judicial District Court for temporary custody of the minor children. Subsequent to the entry of an Instanter Order, a continued custody hearing was held on October 31, 2002, in which the court maintained custody of the minor children with OCS. Prior to the time Ms. A turned the children over to OCS, OCS and Quad Area housing had provided her rent-free housing for three months, but after that she was unable to pay the rent. Sometime after the children were taken into OCS custody, she went to live with her mother in a two-bedroom mobile home that was not sufficient in size to accommodate the three children.
A judgment of adjudication declaring the children to be in-need-of-care was rendered by the court on January 20, 2003. The first case plan filed by OCS required several actions be taken by Ms. A towards achieving the goal of reunification, including: obtaining and maintaining adequate housing for her family; obtaining and maintaining employment and income sufficient to support her family; contributing $50.00 per month to the care of her children; obtaining spousal abuse assistance and refraining from involvement in relationships *81 that may include domestic violence; completing a substance abuse assessment and participating in drug screens; and attending all scheduled visitations with her children. Case plan review hearings on October 3, 2003 and January 18, 2004, indicated the goal at those times was still reunification. On April 8, 2004, the court approved the change of the case plan from reunification to termination of parental rights. Case plan review hearings were also held on October 7, 2004 and April 26, 2005.
OCS filed a petition for termination of parental rights and a trial was held on June 28, 2005.[1] Karen Fontenot, Ms. A's OCS case worker, testified at trial that Ms. A had failed to comply with the case plans. According to Ms. Fontenot, Ms. A's major failure was that throughout the entire time period, she continued to live with her mother in the two-bedroom trailer that was not appropriate because the grandmother would not allow the children to live there. Ms. A had never identified a home for OCS to come look at where she wanted her children to live. She also testified that from October of 2002 through September of 2003, that Ms. A did not pay any child support to her children. Beginning in April of 2003, she maintained a steady stream of jobs and paid child support through garnishments of $66.00 per month per child. From April of 2003 to June of 2003, she worked at a supermarket; from June of 2003 to April of 2004, she worked at Wal-Mart; and from May of 2004 to March of 2005, she worked at an Exxon station. In addition, while Ms. A had gone to a substance evaluation and then missed several sessions, OCS received notification in October of 2003 that she did not need substance abuse treatment.[2] She attended all visitations with the children except one, passed all drug screens, and attended a spouse abuse program on March 25, 2003.
When asked "[d]o you know of any services or referrals that the department could give to the mother that they have not done so?", Ms. Fontenot answered "I personally can't think of anything that was not offered." She was never questioned specifically about any services that were offered to Ms. A to assist her in finding suitable housing, however, it is undisputed that after the children were turned over to OCS in October of 2002, OCS provided no assistance or services to Ms. A to assist her obtaining adequate housing.
Alex, Ms. A's oldest son, testified that although he loved his mother, he wanted himself and his brothers to be adopted by their foster families. He testified that he felt that his mother should have been able to provide a home for them by now. After Alex's testimony, counsel for OCS told the court that Alex's therapist was available to testify, but as Alex had already spoken for himself, OCS waived her testimony at that time.
Finally, Ms. A testified that she loved her children, that she desired to care for them and to be reunited with them, and that given the opportunity she would be able to provide emotional and financial support and a stable environment for her children. She was never asked why she had not been able to provide a suitable home for her family.
The trial court found that OCS had proven by clear and convincing evidence that termination of parental rights was appropriate under. La. Ch. C. art. 1015(4) *82 and (5). Specifically, the trial court found that the mother had failed to obtain safe, suitable housing, and had failed to provide support for a six month period. The court of appeal reversed, finding that the OCS case plans failed to meet statutory requirements in that they did not contain any attempt by OCS to assist T.A. in acquiring suitable housing. State ex rel. A.T., T.A., and J.A., 05-2032 (La.App. 1 Cir. 2/15/06), 925 So.2d 52 (not designated for publication). The court of appeal also found that the trial court erred in terminating parental rights based on the mother's non-support for a six-month period because this time period coincided with the break-up of her marriage and eviction from her residence. Id. Finally, the court of appeal found that OCS failed to prove termination was in the children's best interests. Id. We granted OCS's writ application. State ex rel. A.T., T.A., and J.A., 06-0501 (La.3/24/06), 925 So.2d 1216.

DISCUSSION
Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. State ex rel. S.M.W., 00-3277 (La.2/21/01), 781 So.2d 1223.
Article 1015 provides the specific statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. Relevant to this case, parental rights may be terminated on the following grounds:
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
. . .
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
. . .
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
La. Ch. C. Art. 1015. In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. State ex rel. J.A., 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; State ex rel. G.J.L., 00-3278 (La.6/29/01), 791 So.2d 80, 85.
"It is well-settled that an appellate court cannot set aside a juvenile court's *83 findings of fact in the absence of manifest error or unless those findings are clearly wrong." State ex rel. S.M.W., supra at 1233 (citing In re A.J.F., 00-0948 (La.6/30/00), 764 So.2d 47, 61).
The crux of this case, and the primary reason the OCS sought to terminate parental rights, was the failure of Ms. A to substantially comply with the case plan pursuant to La. Ch. C. art. 1015(5)[3] by her failure to obtain housing suitable for herself and her three children. Were the issue at stake merely whether or not the trial court's factual findings, that the State had proven by clear and convincing evidence that "at least one year had elapsed since [the children were] removed from the parents custody" and that "there has been no substantial parental compliance with a case plan . . . ," were manifestly erroneous, we would have to say that they were not. There is no dispute that the children were in state custody for at least one year and that all the case plans required Ms. A to obtain and maintain adequate housing for herself and her three children and she clearly did not do so. However, the court of appeal reversed the trial court's finding not on this factual issue, but on the legal issue of whether or not OCS had a statutory obligation, after the children were turned over to OCS, to remove the impediment to reunification prior to seeking termination of parental rights. The court of appeal found that OCS had this legal obligation and that, as a matter of fact, the record reflected that OCS had not made any effort to assist Ms. A in finding suitable housing after removal of the children from Ms. A's custody.
Pursuant to the Adoptions and Safe Families Act of 1997, 42 U.S.C.A. § 601, et seq., states are mandated to establish "permanency plans" for children within the foster care system. State ex rel. J.M., 02-2089 (La.1/28/03), 837 So.2d 1247, 1256. The Act provides that such plans must demonstrate that the State make reasonable efforts to "preserve and reunify" the family. Id. If such measures fail, the State is mandated to make reasonable efforts to place a child for adoption or with a legal guardian. Id.
Accordingly, the Louisiana Children's Code provides that, except in extraordinary circumstances as set out in La. Ch. C. art. 672.1[4], the State must undertake reasonable *84 efforts to assist the parent in removing the obstacles to reunification. For instance, at the first stage of the process, "[t]he court shall immediately determine whether reasonable efforts have been made by the department to prevent or eliminate the need for the child's removal. . ." before granting an instanter order taking the child into state custody. La. Ch. C. art. 619(B). Further, at the hearing for continued custody, which in this case was held on October 31, 2002, "the court shall determine whether the department has made reasonable efforts as defined in Art. 603(17) to prevent or eliminate the need for removal of the child from his home, and after removal, to make it possible for the child to safely return home." La. Ch. C. art. 626(B). "Reasonable efforts" are defined by La. Ch. C. art. 603(17) as "the exercise of ordinary diligence and care by department caseworkers and supervisors and shall assume the availability of a reasonable program of services to children and their families."
It is undisputed in this case that the only effort OCS made to assist Ms. A in obtaining adequate housing was to provide Ms. A with rent-free housing for three months, and a two-month extension, prior to Ms. A turning the children over to OCS in October of 2002. However, the duty to make reasonable efforts to remove the impediments to reunification does not necessarily stop once the children are removed from the parent's custody. In fact, Article 672.1 sets out the only circumstances under which reunification efforts are not required and even then, the State must file a motion for a judicial determination that efforts at reunification are not required and prove as much by clear and convincing evidence. See footnote 4, supra. The State did not do so in this case.
In addition, in order to support removal of a child from the custody of a parent in any such disposition, La. Ch. C. art. 682 provides that the court must "determine whether the department has made reasonable efforts to prevent or eliminate the need for removal of the child from his home and, after removal, to reunify the parent and child or to finalize the child's placement in an alternative safe and permanent home in accordance with the child's permanent plan." Further, "[t]he department shall have the burden of demonstrating reasonable efforts." La. Ch. C. art. 682(A). Thus, at least as long as the child's permanent plan is reunification, in accordance with that plan, the State has the duty to make reasonable efforts to reunify the parent and child.
Finally, at the stage where a child has been adjudged in need of care and termination of parental rights proceedings have been filed, grounds exist for involuntary termination under La. Ch. C. Art. 1015(5) only where the child has been removed from the parents custody for one year pursuant to court order, there has been no substantial compliance with a case plan[5] *85 for services which has been approved by the court as necessary for the safe return of the child, and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future. Unlike the other grounds listed in La. Ch.C. art. 1015, termination under La. Ch. C. art. 1015(5) may only be ordered "after affirmative efforts have been attempted by the state to reunite the family by providing rehabilitative services, if needed, to the parent." Lucy S. McGough and Kerry Triche, Louisiana Children's Code Handbook, p. 522 (2006).[6]
Here, the trial court's order terminating parental rights under La. Ch. C. art. 1015(5) was erroneous because the record reflects that OCS never undertook reasonable efforts at reunification after the children were taken into state custody.[7] *86 OCS admits that no rehabilitative services were offered to Ms. A to assist her in obtaining suitable housing after the children were taken into custody in October of 2002, yet this was the main, if not sole, impediment to reunification cited continuously by OCS.[8]
Further, based on this record it is impossible to discern whether Ms. A was unable to provide adequate housing because of lack of adequate assistance or was simply unwilling to provide adequate housing. This is significant because clearly if she was simply unwilling, grounds for termination would exist. However, the State bears the burden of proof by clear and convincing evidence and where the record does not reflect that in spite of reasonable efforts by the State to provide assistance, the parent still would not obtain adequate housing, this burden cannot be met. On the other hand, under our law, a child cannot even be found to be a child in need of care under La. C.C. art. 606 where the sole ground for taking the child into state custody is that the "parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources." La. C. Ch. art. 606(B); see also La. C. Ch. art. 603(14)(a) ("Consistent with Article 606(B), the inability of a parent or caretaker to provide for a child due to inadequate financial resources shall not, for that reason alone, be considered neglect"). In fact, this Court has held that termination of parental rights would be unjustified if lack of stable housing is the only ground for such termination. State ex rel. S.M.W., supra at 1236. In this case, the record does not contain clear and convincing evidence that termination is warranted under La. Ch. C. art. 1015(5).
Mindful of the fact that the children had been in foster care for an extended period of time, the court of appeal attempted to expedite the process by remanding the matter to the trial court with instructions to exercise its power under La. Ch. C. art. 677 to require the case plan for reunification of the family to include certain enumerated provisions, including "a plan to assist T.A. in obtaining appropriate housing." La. Ch. C. art. 677 governs case plan review hearings and provides that the court may either enter an order approving of the case plan, or "[i]f the court does not approve the case plan, it shall enter specific written reasons for finding that the plan does not protect the health and safety of the child or is otherwise not in the best interest of the child." La. Ch. C. art. 677(C). Further, La. Ch. C. art. 700 provides that at the conclusion of the case review hearing, the court may "find that the case plan is not appropriate, in whole or in part, based on the evidence presented *87 at the contradictory hearing and order the department to revise the case plan accordingly." La. Ch. C. art. 700(A)(2). The Official Comments to this article make clear that the court is entitled to accept or reject the case plan, "but is not authorized to revise the plan itself." La. Ch. C. art. 700 (Comment-1991). "The department remains responsible for revision of the case plan." Id.
However, as this Court has explained, "[w]hen reading [the provisions of the Children's Code] as a whole, it becomes clear that the legislature has attempted to achieve a delicate balance between the broad authority of review reserved to the courts and the specific powers given to OCS." State ex rel. L.C.B., 01-2441 (La.1/15/02), 805 So.2d 159, 164. "The foregoing provisions [arts. 692, 700, 702] define the juvenile court's overarching role in supervising and reviewing the progression of the child's case." Id. "These provisions dictate that the juvenile court retains the ultimate authority over a child's placement." Id. (holding that, however, the Department has the sole authority to determine the specific placements of children committed to its custody.)
Contrary to the State's argument, the judgment of the court of appeal ordering a remand to the trial court "with instructions to exercise its power under La. Ch. C. art. 677 to require the case plan for reunification of this family to include . . ." does not direct the trial court to rewrite the case plan itself, nor does it determine a specific placement for the children. The remand simply directs that before Ms. A's parental rights can be terminated under La. Ch. C. art. 1015(5), the record must reflect that the State made some sort of reasonable efforts to assist Ms. A in obtaining adequate housing. However, given that these children have already been in foster case for a lengthy period, time is of the essence. Therefore, the trial court must direct these efforts will be undertaken on an expedited basis and Ms. A must actively participate in pursuing all assistance offered by OCS.

CONCLUSION
Permanent termination of the legal relationship existing between natural parents and their children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable statutory grounds exist and are proven. Before this can be done, except as provided by Article 671.2, the primary goal of the State in the child in need of care process must be reunification and, towards that end, the State must undertake reasonable efforts to reunite the family. In this case, that means making reasonable efforts to assist the mother in finding suitable and affordable housing for herself and her children. The record in this case does not show by clear and convincing evidence that OCS has made such efforts. If Ms. A fails to take advantage of whatever services are offered to obtain housing, the trial court retains the authority to terminate her parental rights so that her children can be afforded the opportunity to be adopted.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
TRAYLOR, Justice, dissents.
KNOLL, Justice, dissents and assigns reasons.
*88 KNOLL, Justice, dissenting.
The majority found the district court erred in terminating the mother's parental rights because OCS failed in its obligation to make reasonable efforts to assist the parent in finding suitable housing before seeking to terminate parental rights. For the following reasons, I respectfully dissent.
As noted by the majority, the district court found OCS had proven by clear and convincing evidence that termination of parental rights was appropriate under La. Ch. C. art. 1015(4) and (5) on the grounds the mother failed to comply with the OCS case plan by not providing a safe, stable and permanent home for her children. In its reasons for judgment, the district court determined the mother had failed to comply with the case plan by not finding suitable housing, participating in counseling offered by OCS, and establishing proof of income. The court further found the mother had failed to provide support for at least a six-month period from October 30, 2002, to September 3, 2003.
While acknowledging the mother was not a "cruel" or "bad" person and she had good intentions and loved her children, the court noted that love and intentions were not enough and the mother needed to "put some actions behind her love." Although noting the mother had made sporadic attempts to comply with the case plan, the court concluded these attempts did "not rise to the level of substantial compliance as required by Article 1015(4) and (5)." The record clearly supports this conclusion.
In October 2002, the mother informed OCS she could no longer care for her children as she was being evicted and her electricity was being turned off and she had little food and no transportation. At the time, the mother was unemployed, separating from her husband, and was in the process of being evicted from her residence. Consequently, OCS was granted custody and placed the children in foster homes. Thereafter, the mother went to live with her mother in a two-bedroom mobile home, a home in which the children were not allowed to reside.
Subsequently, in January 2003, the children were adjudicated children in need of care. OCS developed case plans for reunification in which it sought chiefly to have the mother obtain adequate housing for her family, maintain employment sufficient to support her family, and obtain psychological counseling as well as counseling for spousal abuse and substance abuse. When the mother had failed to comply with the case plan by April 2004, the goal of the case plan was changed from reunification to termination of parental rights, at which time the mother was given until December 2004 to complete her case plan. Notably, it was only when the mother failed to comply, especially to find adequate housing, did OCS move to terminate her parental rights.
As noted by the district court, the mother essentially only had to get a house and to prove she could provide the basic necessities of life for her children. This mother never got past step one.
At time of trial in June 2005, the mother still had not obtained adequate housing, but rather continued to live with her mother for the entire period of time her children were in custody. Moreover, the mother was only able to hold a series of short-term jobs. Significantly, she has never voluntarily supported her children, but rather paid child support only by way of garnishing her salary.
At trial, the mother could not explain why after three years she could not have worked more jobs in order to acquire the initial funding necessary to get into a suitable residence or even to rent an apartment or trailer. Instead, she remained living with her mother rent free, *89 her only expenses being when the State garnished her wages and for her personal necessities.
In my view, the facts speak for themselves and no further proof is necessary. The mother has not improved her situation since the time of relinquishment. She has not obtained a steady job, suitable housing, or established the financial wherewithal to support her children in their best interest.
While I do not question this mother's love for her children, the overriding issue in my view has to be the best interest of the children. The record does not establish how the mother's circumstances have materially changed since the relinquishment to demonstrate that it would now be in the best interest of the children for the mother to retain her parental rights. While OCS is obligated to make reasonable efforts to reunite the family, OCS was under no obligation to make the mother comply with the case plan. The burden rather was on the parent to either comply with the plan or object to it. The mother in this case simply did neither. Accordingly, I would reverse the court of appeal and reinstate the trial judge's judgment terminating this mother's parental rights.
NOTES
[1] Initially, the father of A.T. and the father of T.A. and J.A. were included in the case plans; however, both fathers voluntarily surrendered parental rights at the termination hearing.
[2] She received a DWI in September of 2004.
[3] La. Ch.C. art. 1036(C) enumerates the substantive elements proving lack of substantial compliance with a court-approved case plan under La. Ch. C. art. 1015(5). This prong may be evidenced by "[t]he parent's lack of substantial improvement in redressing the problems preventing reunification." La. Ch.C. art. 1036(C)(6). Likewise, the substantive elements proving lack of a reasonable expectation of significant improvement in the near future include "[a]ny other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior." La. Ch. C. art. 1036(D)(3).
[4] Art. 672.1. Reunification efforts determination

A. At any time in a child in need of care proceeding when a child is in the custody of the department, the department may file a motion for a judicial determination that efforts to reunify the parent and child are not required.
B. The department shall have the burden of demonstrating by clear and convincing evidence that reunification efforts are not required, considering the health and safety of the child and the child's need for permanency.
C. Efforts to reunify the parent and child are not required if a court of competent jurisdiction has determined that:
(1) The parent has subjected the child to egregious conduct or conditions, including but not limited to any of the grounds for certification for adoption pursuant to Article 1015.
(2) The parent has committed murder or manslaughter of another child of the parent or has aided or abetted, attempted, conspired, or solicited to commit such a murder or manslaughter.
(3) The parent has committed a felony that results in serious bodily injury to the child or another child of the parent.
(4) The parental rights of the parent to a sibling have been terminated involuntarily.
D. If the court determines that reunification efforts are not required, it shall document that determination by written findings of fact. A permanency hearing may be conducted immediately and shall be conducted within thirty days after the determination.
[5] Article 673 requires the State to develop a case plan within 60 days after the child enters state custody. The requirements of these plans are specifically regulated by statute. La. Ch. C. art. 675(B) provides as follows:

B. The case plan shall include at least the following:
(1) A description of the type of home or institution in which the child is placed, including a discussion of the child's health and safety, the appropriateness of the placement, and the reasons why the placement, if a substantial distance from the home of the parents or in a different state, is in the best interests of the child.
(2) A plan for assuring that the child receives safe and proper care and that services are provided to the parents, child, and foster parents in order to improve the conditions in the parents' home, facilitate the safe return of the child to his own home or other permanent placement of the child, or both, and address the needs of the child while in foster care, including a plan for visitation and a discussion of the appropriateness of the services that have been provided to the child under the plan. When appropriate for a child age sixteen or older, the plan shall include a written description of the programs and services which will help the child prepare for the transition from foster care to independent living.
(3) Documentation of the efforts the agency is making to safely return the child home or to finalize the child's placement in an alternative safe and permanent home in accordance with the child's permanent plan. For children whose permanent plan is adoption, this documentation shall include child-specific recruitment efforts such as the use of state, regional, and national adoption exchanges, including electronic exchange systems.
La. Ch. C. art. 675(B)(emphasis added).
[6] As the authors explain in discussing the requirements of La. Ch. C. art. 1015(5):

Unlike the preceding grounds, this ground authorizes termination of parental rights only after affirmative efforts have been attempted by the state to reunite the family by providing rehabilitative services, if needed, to the parent. This is the most complicated ground for termination because comprehension requires reference to Article 1037 for the definitions of its key concepts and an understanding of the Department of Social Service's responsibilities for making reasonable efforts to avoid removal and reunify the family and for undertaking permanency planning for the child pursuant to the federal "Adoption Assistance and Child Welfare Act of 1980," P.L. 96-272, 42 U.S.C.A. 6601 et seq. See the Authors' Notes to Chapter 11 of Title XI.
Id.
[7] The court of appeal reversed the trial court's judgment terminating parental rights under La. Ch. C. Art. 1015(4), which, as stated above, can be met where the trial court finds an intention to permanently avoid parental responsibility because the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months. However, while testimony in the record indicates that Ms. A did not pay child support from October 30, 2002, through September 3, 2003, the record also indicates that she was employed from April of 2003 to June 2003 and that her wages were garnished during her periods of employment. Further, as the court of appeal found, the period of non-support coincided with a period of turmoil for Ms. A, including the break-up of her marriage, eviction from her home, and her lack of transportation. Because of these circumstances, the court of appeal found that the State did not establish that Ms. A "evidenced an intent to abandon her children by avoiding financial responsibility for their support."

Further, poverty, and thus lack of support, cannot be the sole reason for terminating parental rights, there must be willful neglect in the failure of a parent to support his or her children. Id.; State ex rel. M.L., 00-153 (La. App. 3 Cir. 5/3/00), 761 So.2d 103. The fact that Ms. A was employed consistently, at least from September 2003, and paid child support, albeit through wage garnishment, along with the fact that she was indeed in personal turmoil during the six months she did not pay child support, negates a finding that the State proved by clear and convincing evidence an intent to abandon the children by virtue of her six months of non-support. We agree with the court of appeal's finding on this issue.
[8] "Reasonable efforts" as defined by La. Ch. C. art. 603(17) does not require the state to provide rent-free housing to parents whose children are removed due to lack of adequate housing. It does mean, however, that the State must at least direct parents toward appropriate agencies that may be able to assist them in obtaining their own housing. Because the record fails to show that the State undertook efforts to assist Ms. A in obtaining adequate housing after she turned the children over to the State, the court of appeal was correct in ruling that termination under La. Ch. C. art. 1015(5) was erroneously ordered by the trial court.