GASKINS, J.
hThe defendant, T.P.M., appeals from a trial court judgment terminating his parental rights to his two children, C.M.M. and A.R.M. For the following reasons, we affirm.
FACTS
When this matter arose, the children’s mother was a drug abuser and T.P.M. was incarcerated on domestic violence charges for battering her. The battery occurred in the presence of the children. He had previously served time on a drug offense. In March 2003, the mother sent the children to stay with their uncle, the defendant’s brother. The uncle and his girlfriend got into a disagreement and left the children unattended at their residence. C.M.M., who was then eight years old, took A.R.M., then five years old, to a neighbor’s house where she called her maternal grandmother. The grandmother picked up the children and kept them overnight. She could not keep them permanently because her husband was a child molester. She contacted the authorities the next day to take the children.
In May 2003, the court signed an instanter order for removal. The children were placed in a foster home because no suitable relatives could be found. The defendant’s mother was not considered because the defendant and his brother had been placed in foster care.
In July 2003, the court adjudicated the children in need of care and assigned custody to the state. A case plan was formulated with the goal of reunifying the children and parents. The mother was given a list of requirements and the case was reviewed every six months. In February 2004, the defendant was released from prison and was added to the case Implan.[1] The defendant was ordered to attend parenting classes, submit to a substance abuse evaluation, and attend a domestic violence perpetrators group. When the matter was reviewed in May 2004, the defendant had refused to comply with these requirements.
In February 2005, the state filed a petition for termination of parental rights, arguing that the mother and the defendant had utterly failed to comply with the requirements of the case plan. When the case was reviewed in May 2005, the state contended that return to the family home would be contrary to the welfare, health, and safety of the children and would not be in the best interest of the children. The state recommended that the children be continued in state custody with a plan of adoption by their foster parents.
*333 The defendant opposed the plan to terminate his parental rights. The hearing in this matter began in April 2005, but was recessed to allow psychological evaluations of T.P.M. and the children. The hearing resumed in October 2005. After hearing testimony from the foster care worker and several psychologists who evaluated T.P.M. and the children, the trial court stopped the hearing and sent the defendant for therapy with Chris Miciotto, a clinical social worker. T.P.M. was then to be reevaluated.
|aThe hearing resumed in September 2006. At the close of the hearing, the trial court terminated the defendant’s parental rights. The court observed that this matter had been pending for almost four years. There had been no substantial compliance with the case plan by T.P.M. and there was no reasonable expectation of improvement. The court noted that the defendant failed to comply with his program of treatment, had not paid child support, and had tested positive for marijuana during the course of these proceedings. According to the court, the defendant is concerned only with his own interests and his demeanor in court showed that he should not be raising children. The court found that the state proved all allegations by clear and convincing evidence and that the need for a safe and stable home for the children was controlling. The court ordered that the defendant’s parental rights be terminated. The defendant appealed.
TERMINATION OF PARENTAL RIGHTS
The defendant contends that the state failed to prove by clear and convincing evidence that his parental rights should be terminated. He claims that there is nothing in the record to show that he is an unfit parent. The defendant also argues on appeal that the court failed to properly weigh his progress on the case plan. He cites his completion of anger management and parenting courses in prison, as well as those completed after his release. He claimed to be making progress in the counseling he received from Mr. Miciotto. These arguments are without merit.
Title X of the Louisiana Children’s Code governs the involuntary termination of parental rights. Permanent termination of the legal | relationship existing between natural parents and children is one of the most drastic actions the state can take against its citizens. State ex rel. AT., 2006-0501 (La.7/6/06), 936 So.2d 79.
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. Parents have a natural, fundamental liberty interest to the continuing companionship, care, custody, and management of their children. These interests warrant great deference and require full, vigilant due process protection that fair procedure be followed when the state seeks to terminate the parent-child legal relationship. Balanced against those protections is the child’s profound interest in terminating parental rights which prevent adoption, and hamper the establishment of secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing the parents’ and the child’s interests, the courts of this state have consistently found the interests of the child to be paramount over those of the parents. State ex rel. L.B. v. G.B.B., 2002-1715 (La.12/4/02), 831 So.2d 918.
The state’s parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the state seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary *334 termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by |Rproviding an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the state remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. State ex rel. L.B. v. G.B.B., supra; State ex rel. S.M.W., 2000-3277 (La.2/21/01), 781 So.2d 1223.
In order to terminate parental rights, the court must find that the state has established at least one of the statutory grounds contained in La. Ch. C. art. 1015. It provides, in pertinent part:
The grounds for termination of parental rights are:
[[Image here]]
(4) Abandonment of the child by placing him in the physical custody of a nonpar-ent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
[[Image here]]
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant | (¡improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La. Ch. C. art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Even upon finding that the state has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child’s best interests. State ex rel. C.E.C. v. D.M.D.B., 40,409 (La.App. 2d Cir.9/28/05), 912 So.2d 418.
La. Ch. C. art. 1036, which addresses proof of parental misconduct, provides in pertinent part:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the *335 near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and | continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The issue of parental compliance with a case plan, the parent’s expected success of rehabilitation, and the expectation of significant improvement in the parent’s condition and conduct are questions of fact in a proceeding for termination of parental rights. An appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State ex rel. C.E.C. v. D.M.D.B., supra; State ex rel. S.S.S., 39,047 (LaApp. 2d Cir.8/18/04), 880 So.2d 153.
Children have a need for permanency. Forcing children to remain in foster care indefinitely, when there is no hope of reuniting them with their families, runs afoul of the state and federal mandates to further the best interests of the child. State ex rel. C.E.C. v. D.M.D.B., supra.
Rebecca Teasley of the DeSoto Parish Office of Community Services (OCS) was the foster care case worker in this matter. She testified in this matter that the case plan was reviewed with the defendant when he came to the office in February 2004, shortly after his release from prison. He missed some case review meetings and reportedly told the children that he would not cooperate with the case plan. He first attended a review meeting in late November 2004. Ms. Teasley stated that the defendant refused to attend parenting and anger management courses arranged for him. Instead, he |Rclaimed to have taken courses in jail and also took courses he arranged for himself.
In August 2004, Ms. Teasley was present when the defendant had a traumatic visit with the children. The defendant got into a discussion with the children. C.M.M. indicated that she was uncomfortable and Ms. Teasley directed the defendant to cease the discussion. The defendant became angry and began cursing. Ms. Teasley terminated the visit. C.M.M. was so upset she almost threw up and said that was the way T.P.M. acted when he hit her mother.
According to Ms. Teasley, the defendant made no progress toward reunification. The children told Ms. Teasley that they did not want to return to their parents and wanted to be adopted by their foster parents. When asked about family counseling, Ms. Teasley noted that the children’s counselor did not think that was in their best interest.
Harold Ledford with Project Celebration testified that the defendant was referred to his agency for anger management and parenting courses, but that he never showed up. Mr. Ledford tried to set up a schedule that the defendant could comply with, all to no avail.
Andrea Williams of Support Enforcement Services testified that there is a support order against the defendant for *336 C.M.M. and A.R.M. for $135 per month per child. These orders were entered in February 2005. At the time of the hearing, the defendant owed $1,945 in past-due support for C.M.M. and $1,645 for A.R.M.
| pCheryl Shirley of Northwest Regional Center for Addictive Disorders did an assessment of the defendant and found that he was addicted to drugs. She recommended intensive outpatient treatment four times per week. The defendant refused to comply, saying that he did not have transportation. He also refused to submit to drug screening by the OCS.
Shelly Booker, the social worker who counseled the children,, testified that both girls had emotional problems when they first entered foster care. They had witnessed domestic abuse in the home, as well as observing drug use by their parents. They had also experienced having both parents incarcerated at various times. The children are afraid of the defendant and A.R.M. drew pictures of the defendant hurting her mother. She also had nightmares in which the defendant harmed her foster mother. Ms. Booker stated that the children never expressed a desire to live with the defendant. Rather, they told her they strongly desired to stay with their foster parents.
The children had been in their foster home since 2003. Ms. Booker noted the incident in August 2004, when the defendant became belligerent during visitation. She stated that after that point, visitation was moved to the OCS office. According to Ms. Booker, the defendant was arrested for simple battery in December 2004. This fact, combined with the defendant’s refusal to comply with the case plan and the problematic visitation, indicated that family counseling would not be appropriate. There was also information that the defendant was driving by the foster home, causing concern to the children. Ms. Booker testified that the children had [ ^significant stability for three years in the foster home and that taking them away from the foster parents would be devastating.
The defendant was evaluated by Dr. Daniel Lonowski, a psychologist, in May 2004. His report was introduced into evidence at the hearing. Dr. Lonowski noted that when the defendant was nine years old, he and his brother were taken into state custody. The defendant told Dr. Lo-nowski that his mother relinquished custody of him and his brother because she could not control their behavior. T.P.M. was distrusting and suspicious of the state. Although T.P.M. denied alcohol abuse, he had previously been incarcerated for distribution of marijuana. During outpatient substance abuse treatment, T.P.M. continued to use marijuana. In spite of these factors, Dr. Lonowski did not classify T.P.M. as chemically dependent.
Dr. Lonowski concluded that T.P.M. had narcissistic personality traits and was self-centered. He stated that narcissistic people harbor notions that they are entitled to special rules or considerations and they become upset if these are not forthcoming. He stated that such individuals have frail egos and when confronted, with their narcissistic confidence shaken, they tend to experience emotional distress. They then react with hurt, depression, or hostility. They tend to be insensitive to the needs and feelings of others and they typically exploit relationships. Dr. Lonowski opined that T.P.M. has the ability to parent the children, but because of his difficult family history and his narcissistic personality orientation, he might be drawn into antagonistic encounters with certain family members that could compromise his parenting.
InDr. Lonowski recommended that T.P.M. and the children be referred for *337 family counseling to address issues such as his absence from their lives while he was incarcerated and the children’s concerns about their parents.
Dr. John Simoneaux, a psychologist, evaluated the defendant in June 2005 and testified at trial. He also found the defendant to be narcissistic, which is the most difficult personality disorder to treat. The defendant sees himself as being without fault. The defendant is self-centered and self-indulgent. He makes excessive demands on others for attention and sympathy, but is resentful when any demands are placed on him. The defendant does not get along well with others in social situations and is uncomfortable around women. He avoids deep emotional involvement. Dr. Simoneaux found the defendant to be unrealistically grandiose in his self-appraisal and not receptive to counseling.
Dr. Simoneaux said the defendant reportedly completed parenting and anger management classes in prison. According to Dr. Simoneaux, the defendant did not learn much, because his views on parenting showed a poor fund of knowledge. Dr. Simoneaux said that the defendant was not able to appropriately parent the children and there was a high potential for future abuse or neglect. While there was not a high risk that the defendant would physically abuse the children, his poor judgment and poor impulse control could harm the children as a result of his bad judgment. He said that the defendant would be unlikely to protect the children if it conflicted with his own self-interest.
lii>Dr. Simoneaux noted the defendant’s failure to comply with the requirements of the state in order to get the children back. He found that the defendant was distressed, not so much at the prospect of losing the children, but because people think he is wrong and he does not believe that he is. He stated that it was consistent with the defendant’s personality to insist that he would do whatever it took to get his children back, and then do nothing.
According to Dr. Simoneaux, the finding by Dr. Lonowski that T.P.M. did not have a substance abuse problem is based on a test in which the answers are easily predictable. Dr. Simoneaux disagreed with Dr. Lonowski’s purported recommendation for family counseling. The children’s therapist, Ms. Booker, thought that family counseling would be harmful to the children and Dr. Simoneaux concurred. He also stated that Dr. Lonowski recommended family counseling without evaluating the children.
Dr. Simoneaux evaluated C.M.M. and found her to be intelligent and articulate. She commented that her father smoked too. much and seemed to describe him smoking crack cocaine. The domestic violence observed by C.M.M. was frightening and emotionally abusive to her. She indicated that she was happy in the foster home and did not want to live with her father.
A.R.M. was also evaluated by Dr. Simo-neaux. He found her to be bright and engaging. She was aware of her mother’s drug abuse and also observed the domestic abuse of her mother by her father. Dr. Simoneaux stated that he would not suggest that the girls be returned to their father.
11sOn October 20, 2005, during the hearing, the court recessed the proceedings to allow T.P.M. an opportunity to undergo counseling with Chris Miciotto, a social worker appointed by the court. The court ordered individual counseling for T.P.M. to determine whether he could progress to the point where family counseling would be appropriate. T.P.M. was then to be reevaluated by Dr. Simoneaux.
*338 The hearing resumed on September 13, 2006, almost one year later. Mr. Miciotto filed his report into the record and was available for questioning. The report indicates that T.P.M. attended 17 counseling sessions from October 25, 2005 to January 18, 2006. The main focus of treatment was T.P.M.’s narcissistic tendencies. Mr. Mi-ciotto noted that keeping T.P.M. focused was difficult. He felt that T.P.M. had made progress and should continue with individual counseling while the issue of family counseling was addressed. T.P.M. denied any drug abuse and said that he used alcohol occasionally. At the hearing, Mr. Miciotto acknowledged that he had not seen Ms. Booker’s evaluation finding that family counseling was not appropriate. Further, he had not evaluated the children. The defendant told Mr. Miciotto that he smoked marijuana on occasion, but failed to tell him about a positive drug screening in May 2006. Mr. Miciotto agreed that people using drugs should not be parenting and that the defendant still needs counseling.
Dr. Simoneaux again evaluated the defendant in January 2006. He testified at the hearing that the defendant had “learned the language” in order to make himself look better. Dr. Simoneaux did not think that the |14defendant had made any progress. He found that the defendant still had narcissistic and antisocial orientations. Dr. Simoneaux observed that the defendant was in the middle of a trial to terminate his parental rights, and still had made no effort to change. The defendant’s visitation had been limited to one hour per month due to his own behavior. Dr. Simoneaux stated that the children should not be held in limbo on the possibility that the father might make some progress.
While the hearing was recessed for T.P.M. to receive counseling, he also chose to be evaluated by a psychologist of his own choosing, Dr. Mark Vigen. This evaluation was filed into the record. Dr. Vi-gen also found that T.P.M. was narcissistic and does not have an accurate view of himself and parenting. Dr. Vigen found that T.P.M. was prone to alcohol and/or drug abuse. Interestingly, T.P.M. submitted to drug testing for Dr. Vigen on May 1, 2006. He tested positive for marijuana.
The defendant testified at the hearing that he could not comply with the case plan set forth by the OCS because he did not have transportation to get to the various meetings and counseling sessions. He claimed to have completed parenting and anger management classes in prison and also in a program of his own choosing after his release. He admitted refusing drug testing by the OCS, but said he would submit to testing by his parole officer. His latest refusal of a drug test was in April 2006. He stated he would have gone, but his pregnant pit bull dog was involved in a fight and he had to attend to that matter.
|1fiThe defendant denied becoming belligerent during visitation with the children in August 2004. He also denied that his mother, who was present, became involved in the disagreement.
The defendant acknowledged testing positive for drugs in May 2006. He stated that he wanted another chance to comply with the state’s requirements, but also wanted more access to the children. He claimed that the children often told him that they wanted to live with him and that they were being confused by others. He acknowledged being behind in his child support.
The record shows that the state has proved by clear and convincing evidence that T.P.M. failed to comply with his case plan and there is no reasonable expectation of significant improvement in his con *339 dition and conduct in the near future. Rather than complying with the case plan, he chose to do things his own way. This behavior is completely consistent with his narcissistic personality, which the state proved is extremely difficult to treat. The record also shows that T.P.M. has demonstrated an inability to control his temper and that the children are afraid of him. In addition, the record reveals that the defendant is a drug abuser who refused to admit his dependency. Most telling is the defendant’s use of drugs during these proceedings. Further, the state showed that, although T.P.M. was employed, he failed to pay his child support for these children. The traits inherent in the defendant’s narcissistic personality, combined with his drug abuse and his refusal to recognize and address his problems, preclude him from parenting these children.
l1fiThe state showed by clear and convincing evidence that the defendant has failed to financially support the children. Further, more than one year has elapsed since the children were taken into state custody and there has been no substantial compliance with the case plan nor is there any reasonable expectation of improvement in the near future. The trial court’s decision to terminate parental rights is not clearly wrong or manifestly erroneous. The record supports the decision to terminate T.P.M.’s parental rights.
EXPERT RECOMMENDATIONS
The defendant argues that Dr. Lonowski and Mr. Miciotto recommended family counseling and Dr. John Simoneaux suggested intensive therapy. The defendant objects that these recommendations were not followed. He claims that the OCS set him up to fail. These arguments are without merit.
As outlined above, Ms. Booker and Dr. Simoneaux found that family counseling was not in the best interest of the children. Recommendations for family counseling by Dr. Lonowski and Mr. Miciotto were made without any evaluation of the children.
The record shows that the defendant was given numerous opportunities to comply with the OCS case plan. The hearing was recessed for more than one year to allow the defendant to receive counseling. The defendant simply failed to cooperate and comply with the OCS requirements to the extent necessary to prevent termination of his parental rights. The defendant was treated fairly and equitably. He was given counseling, as |17well as numerous opportunities to comply with the OCS case plan. The defendant alone is responsible for his noncompliance and the resulting termination of his parental rights.
IN CAMERA EXAMINATION OF CHILDREN
The defendant objects to the trial court’s denial of his request to examine the children in camera regarding where they wanted to live. This argument is without merit.
When the hearing resumed on September 13, 2006, the court denied the defendant’s request that the judge talk to the children in camera, because he did not want to damage their relationship with the parents. The court reserved the right to talk to the children if deemed necessary by any of the experts. The court stated, “We’ll talk to the experts and see what they say. At this time, I’m not going to talk to them before the case but reserve the right to talk to them if deemed necessary by any of the experts.”
In the context of a hearing to terminate parental rights, La. Ch. C. art. 1034(C) provides:
C. If competent, the child may be heard on his own behalf. Any testimony *340 given by a child may be taken by a videotaped interview or by closed circuit television, as authorized by Title 3, Chapter 8 of this Code, or by an in-chambers conference attended only by the judge and court reporter and by counsel for the child, for the petitioner, and for the parents.
La. R.S. 13:3665 provides that a competent witness in any civil proceeding in court or before a person having authority to receive evidence shall be a person of proper understanding.
Guidance for the issues raised in this matter can be gleaned from the general provisions dealing with custody of children. In the context of a | ^regular custody hearing, in determining the best interest of the child the court may consider the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference. La. C.C. art. 134(9).
The weight placed upon the wishes or desires of the child as to whether custody should be changed varies from case to case. Stability and continuity are more important considerations than the wishes of the child. See Legrand v. Legrand, 455 So.2d 705 (La.App. 5th Cir.1984).
While the trial court had the option to determine the competence of the children and, if competent, to' question them regarding their preference, the failure to do so in this case does not constitute reversible error. Even if the children had expressed a desire to live with T.P.M., the record overwhelmingly shows that termination of T.P.M.’s parental rights is in the best interest of the children.
CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court, terminating the parental rights of T.P.M. to C.M.M. and A.R.M. Costs in this court are assessed to T.P.M.
AFFIRMED.

. Shortly after T.P.M.'s release from prison, the children's mother was convicted on drug and other charges and was incarcerated. She also had not complied with the case plan requirements. The mother agreed to the termination of her parental rights. A judgment to that effect was signed by the trial court in July 2006.