PEATROSS, J.
11Mother, K.J., and alleged father, J.C., appeal a judgment terminating their parental rights to the minor children B.M.J.C. and D.A.J.-C. and certifying the children for adoption. For the reasons stated herein, we affirm.

FACTS

On January 31, 2007, the Department of Social Services (“DSS”) received a report of inadequate shelter regarding B.M.J.-C., six years old, and D.A.J.-C., two years old. Family services were provided to the family; however, several months later, DSS workers were unable to locate the family and ultimately learned that the family had moved, but was still living in inadequate housing. On June 20, 2007, a child protection investigator, accompanied by a Oua-chita Parish Deputy Sheriff, visited the home. The investigator found no electricity or running water, rooms infested with roaches, clothing piled all over the floors, toilets full of sewage and milk jugs full of urine. The home had a foul odor and the refrigerator contained spoiled and molded food. The parents were not bothered by the condition of the home. B.M.J.-C. and D.A.J.-C. were coughing and congested, foul-smelling and dirty. The parents informed the investigator that D.A.J.-C. had asthma and had not been getting breathing treatments because there was no electricity. When the mother was unable to find alternate housing for the children on that date, a verbal instanter order was issued and the children were taken into state custody and placed with the paternal grandmother.
The following day, the paternal grandmother related to a DSS worker that the clothing provided for the children did not fit and that there were ^roaches in the suitcases. In addition, D.A.J.-C.’s asthma medication was expired and the breathing machine did not work properly.
A valid court order removing the children from the custody of the parents was entered and the children were adjudicated in need of care, by stipulation, on August 30, 2007. Case plans were formulated, approved by the trial court and implemented with the goal of reunification. Specifically, the case plans for each parent included requirements to attend and successfully complete parenting classes and demonstrate the knowledge learned therein; to submit to a substance abuse assessment and follow recommendations; to submit to random drug screens and remain drug-free for six months; to attend mental health assessments and follow recommendations; to visit with the children in accordance with the visitation; to inform DSS of their whereabouts; and to establish and maintain a safe and stable home with utilities.
While the parents initially followed the case plan by beginning parenting classes and submitting to mental health and substance abuse assessments, the record is clear that the parents did not complete any of the requirements of the case plan. It is undisputed that the father is a chronic alcoholic who continued to drink daily as of the day of the hearing on the petition to *1055 terminate his parental rights. The father began treatment, but stopped attending sessions when he was required to discuss certain personal matters. He was offered inpatient treatment, but refused. The father attended some visits with the children, but showed no improvement in his parenting skills. He testified that he does not have a home with utilities to | .«¡offer the children. Likewise, the mother attended parenting classes and underwent psychological assessments, but failed to follow through with the recommendations. She was provided housekeeping instruction, but did not employ at home the skills she was taught. The mother was adamant about staying with the father and, as of the date of the hearing, had not established a safe and stable home for the children after more than two years of working with DSS. In addition, in October 2007, the parents were evicted from one home and slept in a parked car. During that time, the father was arrested and incarcerated for theft of electricity. The record reflects that the charge was reduced and the father was released on probation. At that point, however, the parents remained homeless. A thorough reading of the record reveals that the circumstances of the parents actually deteriorated after the children were taken into state custody.
The mother and father underwent psychological evaluations by Dr. David Williams. Dr. Williams concluded that both parents are low functioning intellectually and neither parent appreciates the effect that the father’s alcoholism has on the ability of the parents to care for the children. The mother needs 24-hour assistance in caring for herself and the father needs medical detoxification and intense after treatment for alcohol addiction.
As a result, the goal of the case plan was changed to adoption and, on November 14, 2008, DSS filed a petition for termination of parental rights. The trial court granted the petition on the basis of La. Ch. C. art. 1015(5), failure to complete the case plan and failure to show reasonable expectation |4of reformation in the near future, and certified the children for adoption. This appeal ensued.

DISCUSSION

Title X of the Louisiana Children’s Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the state can take against its citizens. State ex rel. A.T., 06-0501 (La.7/6/06), 936 So.2d 79; State ex rel. C.M.M. v. T.P.M., 42,288 (La.App.2d Cir.5/9/07), 957 So.2d 330; State ex rel. A.D.W., 43,012 (La.App.2d Cir.1/9/08), 974 So.2d 137.
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. Parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children. These interests warrant great deference and require full, vigilant due process protection ensuring that fair procedure is followed when the state seeks to terminate the parent-child legal relationship. Balanced against those protections is the child’s profound interest in terminating parental rights which prevent adoption and hamper the establishment of secure, stable, long-term and continuous relationships found in a home with proper parental care. In balancing the parents’ and the child’s interests, the courts of this state have consistently found the interests of the child to be paramount over those of the parents. State ex rel. C.M.M. v. T.P.M., supra, citing State ex rel. L.B. v. G.B.B., 02-1715 (La.12/4/02), 831 So.2d 918.
*1056 |fiThe fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the state remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. State ex rel. S.M.W., 00-3277 (La.2/21/01), 781 So.2d 1223; State ex rel. C.M.M. v. T.P.M., supra.
Although there are several statutory grounds for involuntary termination of parental rights set forth in La. Ch. C. art. 1015, as stated, only one ground need be established. State ex rel. S.C.M., 43,441 (La.App.2d Cir.6/4/08), 986 So.2d 875; State ex rel. J.W.M., 44,513 (La.App.2d Cir.6/24/09), 15 So.3d 1218. La. Ch. C. art. 1015(5) provides the following ground for termination of parental rights:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
UThe petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La. Ch. C. art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State ex rel. C.M.M. v. T.P.M., supra. Even upon finding that the state has met its evidentiary burden, a court still should not terminate parental rights unless it determines that to do so is in the child’s best interest. State ex rel. C.E.C. v. D.M.D.B., 40,409 (La.App.2d Cir.9/28/05), 912 So.2d 418; State ex rel. C.M.M. v. T.P.M., supra.
La. Ch. C. art. 1036, which addresses proof of parental misconduct, provides in pertinent part:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification. *1057 (7) The persistence of conditions that led to removal or similar potentially harmful conditions.
|7P. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
[[Image here]]
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The state must prove that the parent is unfit to retain parental control and that there is no reasonable expectation of reformation in the foreseeable future in order to obtain termination of parental rights when the child has been removed from the parent’s home. State ex rel. B.H. v. A.H., 42,864 (La.App.2d Cir.10/24/07), 968 So.2d 881.
The issue of parental compliance with a case plan, the parent’s expected success of rehabilitation and the expectation of significant improvement in the parent’s condition and conduct are questions of fact in a proceeding for termination of parental rights. An appellate court cannot set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State ex rel. C.E.C. v. D.M.D.B., supra; State ex rel. S.S.S., 39,047 (La. App.2d Cir.8/18/04), 880 So.2d 153; State ex rel. C.M.M. v. T.P.M., supra.
18Children have a need for permanency. Forcing children to remain in foster care indefinitely, when there is no hope of reuniting them with their families, runs afoul of the state and federal mandates to further the best interests of the child. State ex rel. C.E.C. v. D.M.D.B., supra; State ex rel. C.M.M. v. T.P.M., supra; State ex rel. A.D.W., supra.

The Mother

In the case sub judice, the mother assigns as error the trial court’s alleged failure to make reasonable efforts to assist her in removing impediments to reunification with her children prior to terminating her parental rights. As previously stated, the mother underwent a psychological evaluation by Dr. Williams, who noted her love for her children, but opined that the mother was not capable of caring for the children and questioned whether she would ever be capable of doing so. Dr. Williams stated in his report that the mother had “very poor insight into how her deficient parenting and her husband’s alcoholism could adversely affect her children.” Dr. Williams provided specific recommendations for the mother, including referral to family programs which would provide 24-hour assistance to her to ensure she is living in humane conditions. Finally, he noted that she is not a good candidate for therapy, but would benefit from a daily treatment program for mental health patients. On appeal, the mother asserts that DSS failed to assist her with these specific recommendations; therefore, it failed to make reasonable efforts to assist her toward reunification as required by the Children’s Code. We are not persuaded by her argument.
|3The record shows that DSS provided the mother with a very detailed day-by- *1058 day case plan to assist her in improving her daily living skills. The mother was referred to Family Matters, a program that teaches daily living skills, including housekeeping, providing food for her family, personal hygiene and other basic needs. The record indicates that she did not utilize the skills training in her daily life. Further, while the mother did attend some parenting classes made available to her, she showed no signs of improvement in her parenting capacity.
“Reasonable efforts” means the exercise of ordinary diligence and care by department caseworkers and supervisors and shall assume the availability of a reasonable program of services to children and their families. La. Ch. C. art. 603(23). After a review of the assessments, evaluations, services and programs made available to the mother by DSS in this case, we conclude that DSS exercised the required diligence and care as contemplated by the articles of the Children’s Code in assisting the mother toward the goal of reunification with her children.

The Father

The father assigns four errors on appeal. He challenges the sufficiency of evidence to terminate his parental rights, argues that the trial court did not consider the state’s failure to offer him inpatient treatment for alcoholism and asserts that the trial court did not consider the best interests of the children and did not issue written reasons for judgment. First, we find no merit in the father’s challenge to the sufficiency of the state’s evidence regarding his failure to substantially comply with the case plan. | U)He was admittedly drinking alcohol on the day of trial and conceded that he stopped attending treatment sessions for alcohol addiction. The father testified that he had secured housing and paid rent, but there was no running water or electricity at the house due to financial constraints. His testimony indicates that he believes that he is a very good father and that his alcohol abuse does not affect the children because “they are used to” being around that behavior. We find no manifest error in the trial court’s factual determination that the father failed to substantially comply with the case plan and had no foreseeable success of rehabilitation. Based on this record, we find that the father’s pattern of poor behavior is evident and any expectation of improvement is slight.
Next, the father argues that the trial court failed to consider that the state did not refer him to inpatient treatment for alcoholism. The father’s argument is disingenuous. Ms. Dora Broadnax, a registered addiction counselor for the Office for Addictive Disorders, evaluated the father and testified at the hearing. Ms. Broad-nax testified that she referred the father for treatment and that she “really wanted to refer inpatient, but [the father] was very resistant to it.” For this reason, Ms. Broadnax referred the father to outpatient treatment, which he started, but soon quit. The testimony of the father himself reveals that he was willing to consider treatment as long as he was not confined and was free to come and go. Accordingly, a fair reading of the record reveals no support for this assignment of error.
In his next assignment of error, the father urges that the trial court failed to consider the best interests of the children before ordering his |nparental rights terminated. In order to meet its burden, the state need establish only one statutory ground for termination, but the court must also find that termination is in the best interest of the child. La. Ch. C. art. 1037(B); State ex rel. Z.L.H. v. Humphries, 39,528 (La.App.2d Cir.1/26/05), 892 So.2d 745. The Judgment of Termination of Parental Rights herein expressly states that the court found it to be in the best *1059 interest of B.M.J.-C. and D.A.J.-C. that the parental rights of the mother and father be terminated and that these children not be required to wait any longer for a permanent and stable home. This assignment is without merit.
Finally, we note that the trial court provided oral reasons for judgment, which are contained in the record, and expressly referenced those reasons in the judgment itself. While we note that the Children’s Code states that the trial court shall provide written reasons for ruling, the record and oral reasons in this case provide overwhelming support for the otherwise valid and enforceable judgment in this case. In light of the pressing nature of this case and the immediate need of the children to begin a new path of stability and security, we do not find the lack of written reasons for judgment to be reversible error.
In summary, this record indicates no measurable amount of foreseeable improvement in either parent as evidenced by their failure to comply with their case plans and, most significantly, their failure to obtain safe and adequate housing for the family. We find no manifest error in the trial court’s conclusion that termination of parental rights is warranted and that the minor children, who have been in foster care for more than two |12years, are deserving of permanent, stable homes and should be freed for adoption.

CONCLUSION

For the foregoing reasons, the judgment terminating the parental rights of K. J. and J.C. to the minor children B.M.J.-C. and D.A.J.-C. and certifying them for adoption is affirmed. Costs of appeal are to be borne equally by K.J. and J.C.
AFFIRMED.