717 So.2d 265 (1998)
STATE of Louisiana, in the Interest of S.D., C.D., B.D., M.D. & C.D., Plaintiff-Appellant,
v.
Millie Dickerson MOORE, Defendant-Appellee.
No. 31192-JAC.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1998.
*266 Pamela Harper-Jacobs, Michelle Dufour-Brown, for Plaintiff-Appellant.
Walter F. Johnson, III, Shreveport, for Defendant-Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
BROWN, Judge.
In this action to terminate parental rights, the State of Louisiana, through the Department of Social Services, Office of Community Services ("the State"), appeals the trial court's refusal to terminate the parental rights of Millie Dickerson Moore. Because we find that the trial court was in error in refusing to terminate parental rights and in ordering the children to be placed in longterm foster care, we reverse.

Factual and Procedural Background
Because of allegations of physical and sexual abuse and a report that Mrs. Moore's five minor children were living in substandard conditions, the State obtained an oral instanter order on February 19, 1993, removing the children from Mrs. Moore's custody and placing them in foster care.[1] On April 14 1993, the children were adjudicated in need of care and continued in foster care in the custody of the State.
The original goal for the children was reunification with their mother. A case plan was developed by the State with the court's approval. Mrs. Moore submitted to the requisite psychological evaluations. Although completing the required parenting classes, she was unable to demonstrate an ability to parent her children. In addition, she was terminated from the C-BARC program for failure to attend appointments.
Mrs. Moore's visitation with the children was sporadic. At one point, two of the children requested that visits with their mother be terminated. In 1995, Mrs. Moore requested that her visitation be reduced from twice a month to one hour once a month. Even after this reduction, Mrs. Moore did not visit with her children from June 1995 to November 1995. Additionally, attempts to include the children's stepfather in the case plan were unsuccessful.
On several occasions, Mrs. Moore advised the foster care case manager and the court that she no longer wanted to get her children back; it was her desire that they remain in long-term foster care and that she be allowed to continue to visit them. Because of Mrs. Moore's unwillingness to work with the State towards reunification, the case plan goal was changed to termination of parental rights.
Mrs. Moore's visitation remained intermittent and she failed to attend the required family team conferences. On March 11, 1997, a petition to terminate the parental rights of Mrs. Moore, Larry Casey, the alleged father of MSD, and Louis Cowley, father of SDD, CLD, BWD and CND, was filed.[2] Cowley, serving time for the forcible rape of one of his daughters, executed a formal act of surrender and a hearing as to Casey and Mrs. Moore was held on October 30, 1997.
*267 Casey's parental rights were terminated and evidence regarding Mrs. Moore was presented by the State. Elizabeth Morton, foster care case manager, Marlene Harner, court-appointed special advocate, and Lisa Chilvers, adolescent counselor of two of the children, testified that termination of Mrs. Moore's parental rights was in the best interest of the children as it would allow them to be adopted by their foster families. At the conclusion of the State's case, both Mrs. Moore's counsel and the attorney representing the children moved for dismissal, which was denied. No further evidence was adduced. The juvenile court found that although the State proved its case by clear and convincing evidence, termination was not in the best interest of the children. The court refused to terminate Mrs. Moore's parental rights and continued the children in foster care.
On appeal, the State argues that the trial court erred by continuing the children in long-term foster care instead of terminating Mrs. Moore's parental rights and thereby freeing the children for adoption.

Discussion
The termination of parental rights, except when the petition alleges certain criminal or grossly negligent conduct, requires proof by clear and convincing evidence. La.Ch.C. art. 1035. When the court finds that any one of the alleged grounds provided by Article 1015 is proven true by the evidentiary standards required by Article 1035, it may order the termination of parental rights. La.Ch.C. art. 1037; State in the Interest of ML, 95-0045 (La.09/05/95), 660 So.2d 830; State in the Interest of D.T. v. K.T., 29,796 (La.App.2d Cir.06/18/97), 697 So.2d 665.
The termination of parental rights requires both proof of Article 1015 grounds and a finding that the termination is in the best interest of the children. La.Ch.C. art. 1039; State in the Interest of ML, supra; State in the Interest of D.G. v. Danny G., 30,196 (La.App.2d Cir.10/29/97), 702 So.2d 43. If grounds for termination as set forth in Article 1015 are proved, then ordinarily termination will be in the best interest of the children; however, the best interest determination allows the court in an exceptional case, to refuse to terminate, even after proof of article 1015 grounds. State in the Interest of D.G., supra. See Comments, La. Ch.C. art.1937.
In termination of parental rights cases, the trial court's factual findings are subject to the manifest error standard of review. State in the Interest of KLB v. Biggs, 29,512 (La.App.2d Cir.02/28/97), 690 So.2d 965; State in the Interest of V.T., 609 So.2d 1105 (La.App. 2d Cir.1992), writ denied, 614 So.2d 1269 (La.1993).
In the instant case, the trial court found that the State "carried its burden clearly and convincingly that termination ... should be had ... under Article 1015(5)."[3] The trial court, however, found that termination was not in the best interest of the children because:
[There] is the hope that at some particular point in life these children may gravitate back to their natural parents.... [Mrs. Moore] has some very serious problems. That a reformation may or may not be in her future in terms of her ability to care for her children. But the mere fact that they are her children and that there is a desire on her part to be part of their lives and the desire on the part of the majority of the children here to be a part of her life
...
Although finding that the State had proved its case for termination by clear and convincing evidence, the trial court clung to a slim hope of Mrs. Moore's reformation and a desire by her to continue monthly visitation *268 with her children to refuse termination as not being in the best interest of the children.
Notwithstanding the trial court's desire to maintain the parent-child relationship, when children have been removed from their parents' custody following an adjudication as children in need of care, La. Ch.C. art. 701 provides that the goal is permanent placement. La. Ch.C. art. 603(15) defines permanent placement as return of the children to their parents; placement under a guardianship; or placement with adoptive parents pursuant to a final decree of adoption.
In this case, there is no indication that guardianship is warranted and the record is replete with evidence that return of the children to Mrs. Moore is not a viable alternative. As noted by this court in State in the Interest of KLB, supra at 969-970, both federal and state statutory provisions envision permanent or long-term foster care only when, because of special needs or circumstances of the children, adoption has proven difficult.
In the instant case, the children have been in foster care for five years. To continue them in foster care is contrary to the goal of permanent placement. The record reflects that the three families with whom the children are placed desire to adopt. Under these circumstances, permanent or long-term foster care is not in the best interest of these children. The trial court has set forth no "exceptional" reason to warrant its refusal to terminate Mrs. Moore's parental rights.

Conclusion
For the reasons set forth above, the judgment of the juvenile court is REVERSED.
It is hereby ORDERED, ADJUDGED AND DECREED that the parental rights and duties of Millie Dickerson Moore are dissolved and terminated as to the minor children SDD, CLD, BWD, MSD and CND except for the rights of inheritance of the children pursuant to La.Ch.C. art. 1038. Custody of the children is granted to the State of Louisiana, through the Department of Social Services, Office of Community Services. Further, these children are certified for adoption.
Pursuant to La. Ch.C. art. 1037(B) it is hereby ORDERED, ADJUDGED AND DECREED that Millie Dickerson Moore may utilize the services of the voluntary registry as provided by Chapter 15, Title XII of Children's Code, La. Ch.C. art. 1270, et seq.
NOTES
[1] Removed from Mrs. Moore's custody and placed in foster care were SDD (d.o.b.07-21-83); CLD (d.o.b.07-11-84); BWD (d.o.b.08-09-85); MSD (d.o.b.10-29-86); and CND (d.o.b.01-01-88).
[2] The State sought termination based upon La. Ch.C. art. 1015(1), (5) and (9).
[3] La. Ch.C. art. 1015(5) provides for termination of parental rights for children who have been adjudicated in need of care and removed from the parental home when: (a) one year has elapsed since the children were removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual; (b) the parent is now unfit to retain parental control, and there is no reasonable expectation of her reformation in the foreseeable future; and (c) the department has made every reasonable effort to reunite the children with their parent to no avail but now recommends that reunification would not be in the best interest of the children.