BROWN, Chief Judge.
I , Jennifer Martin appeals from a judgment terminating her parental rights to her minor children, T.J.L.M., J.D.O.M., and D.C.M. For the reasons stated herein, we affirm.

Facts and Procedural History

In March of 2007, the Ouachita Parish Office of Community Services (“OCS”) received and validated a report of lack of supervision, abandonment, inadequate shelter and dependency, physical abuse, *1270 and burns. This report was generated as the result of an investigation conducted by a child welfare investigator at the home of Jennifer Martin. The investigator observed three children, two of which were Ms. Martin’s, ages 8 months, 2 years, and 3 years, left alone and/or unsupervised for extended periods of time in a house with no clean clothing or food. In addition, the investigator observed and/or learned through interviews, the following: 1) the children were left unsupervised for an extended period of time in the presence of four lit gas burners; 2) feces covered in flies lying on the floor of the home; 3) soiled diapers were lying in the bathroom and on the front yard; 4) Ms. Martin’s two sons were wearing soiled diapers, and were in an overall extremely dirty condition; 5) Ms. Martin’s two sons had numerous scratches, and one had a severe burn; 6) Ms. Martin hits her children; and 7) Ms. Martin regularly smokes marijuana.
On March 23, 2007, by instanter order, D.C.M., Ms. Martin’s 2-year-old son, and J.D.O.M., her 3-year-old son, were placed into the temporary custody of the State of Louisiana. T.J.L.M., Ms. Martin’s 4-year-old daughter who had been at her grandmother’s house at the time of the |2investigation, was placed into the temporary custody of the state three days later.
The children were found to be children in need of care on June 21, 2007. Thereafter, the trial court approved an OCS-drafted case plan for Ms. Martin and her children.[1] The goal of the case plan was reunification. Notwithstanding the OCS case worker’s repeated attempts to work with her, however, Ms. Martin continuously failed to comply with all but one case plan objective. After more than a year of little to no progress by Ms. Martin, OCS changed its goal of reunification to adoption. A petition seeking the termination of parental rights under La. Ch. C. art. 1015(5) was filed by the state on September 23, 2008.
Trial on the termination of parental rights was first held on March 16, 2009. The only testimony given on that date was by Pamela Henderson, the OCS case worker. Ms. Henderson testified to Ms. Martin’s failure to comply with her case plan objectives and her frequent absence from scheduled appointments; however, before cross-examination concluded the matter was recessed. The trial court informed Ms. Martin that the recess was to her benefit, as it provided her with an opportunity to show progress toward becoming compliant. Over the next nine months the matter was preset numerous times. Finally, on December 7, 2009, trial resumed. After hearing testimony from Ms. Mai’tin and Ms. Henderson, the trial court issued its judgment terminating Ms. Martin’s parental rights and declaring the children eligible for adoption.

Discussion

On appeal, Ms. Martin puts forth two assignments of error: 1) the trial court erred in finding that the state proved by clear and convincing evidence all elements of La. Ch. C. Art. 1015(5); and 2) the state failed to prove that the termination of Ms. Martin’s parental rights was in the best interests of the minor children.
*1271 The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La. Ch. C. art. 1035. The termination of parental rights requires both proof of La. Ch. C. art. 1015 grounds and a finding that the termination is in the best interests of the children. La. Ch. C. art. 1039. If grounds for termination as set forth in Article 1015 are proved, then ordinarily termination will be in the best interest of the children. State in the Interest of S.D. v. Moore, 31, 192 (La.App.2d Cir.08/19/98), 717 So.2d 265.
La. Ch. C. art. 1015(5), which sets forth three elements that the state must prove prior to termination of parental rights, states:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of siynificant improvement in the parent’s condition or |4conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
To clarify what evidentiary proof would be sufficient to prove the second and third elements of Article 1015(5), La. Ch. C. art. 1036 states, in pertinent parts:
,C- Under Article 1015(5), lack of parental compliance with a ease plan may be evidenced by one or more of the following:
(1)The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time. 15(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
*1272 The issues of parental compliance with a case plan and the reasonable expectation of significant improvement in the parent’s condition and conduct are questions of fact. State ex rel. A.R.H. v. Hines, 35,800 (La.App.2d Cir.02/27/02), 810 So.2d 1166. A trial court’s factual findings will not be set aside in the absence of manifest error. Id.; State in the Interest of S.D., supra.
Ms. Martin argues that the facts in this case prove, by at least a preponderance of the evidence, her substantial compliance with her case plan. To support her argument Ms. Martin lists some of the findings contained in her OCS progress reports. These findings are, inter alia, she maintained adequate shelter, attended parenting classes, was ready for inpatient substance abuse treatment, attended an appointment with Louisiana Rehabilitative Services, attended women’s group (once for five days and once for seven days), knows how to properly store food and clothing, and has cooperated with OCS.
Our review of the record, however, reveals a glaringly different picture than the one Ms. Martin attempts to paint. Ms. Martin apparently combed through numerous OCS progress reports and listed the appointments and classes she did attend. Yet she omitted the fact that she failed to complete a single program or attend subsequent appointments with regularity.
|fiThe record shows that Ms. Henderson repeatedly got Ms. Martin enrolled into the programs that she needed to achieve her case plan goals. Ms. Henderson scheduled appointments with doctors, counselors, and other social service agencies. If Ms. Martin did not have transportation to a class, appointment or visitation, Ms. Henderson provided it. Nonetheless, Ms. Martin would attend a session or two and then fail to attend again, and then months or a year later she would inform Ms. Henderson that she was willing to try again. In fact, Ms. Henderson testified that after Ms. Martin’s fifth enrollment in parenting classes at Family Matters was terminated due to her lack of attendance, Family Matters informed Ms. Henderson that it would no longer provide services to Ms. Martin. On two occasions Ms. Martin entered inpatient treatment for substance abuse; both times she left within two days because it reminded her of jail. Of the approximately 20 random drug tests Ms. Martin submitted to, she failed them all. She missed more than half of the scheduled visitations with her children. Her appointment with Louisiana Rehabilitative Services led her to getting a job at Subway; not only did she fail to make her follow-up appointments at Louisiana Rehabilitative Services, she quit her job because she “did not want her [Supplemental Security Income] cheek cut.”
The aforementioned were only a few examples of Ms. Martin’s failure to work her case plan. As the trial court noted, Ms. Henderson and the OCS went above and beyond to help Ms. Martin work her case plan. Regardless of Ms. Henderson’s effort, the only aspect of her case plan that Ms. Martin was compliant with was maintaining adequate shelter. The evidence 17showed that she missed more than half of her scheduled visitations and that she repeatedly failed to comply with the required program of treatment and rehabilitation services provided in the case plan. Clearly, this was sufficient to prove by clear and convincing evidence that Ms. Martin was not in substantial compliance with her case plan. Moreover, Ms. Martin’s testing positive for drugs on all random drug screens, and her inability to complete either an inpatient or outpatient substance abuse treatment program, establish a behavioral pattern which clearly and convincingly proves that there is no reasonable expecta *1273 tion of significant improvement in her condition or conduct in the near future. Ms. Martin’s unsubstantiated testimony that she quit illegal drugs the week before trial does not convince us otherwise. Accordingly, we find no error in the trial court’s determination that the state proved, by clear and convincing evidence, all elements of La. Ch. C. art. 1015(5).
We further find no error in the trial court’s decision that the termination of Ms. Martin’s parental rights was in the best interests of the children. Ms. Martin testified that she wanted her children to come home, but that she was not ready for them to come home just yet because she still had some things she needed to finish, an apparent reference to her needing to complete the objectives of her case plan. Ms. Martin had complied with only one aspect of her case plan in the nearly three years that her children had been in the custody of the state. To expect her to be in full compliance in the near future, much less ever, seems futile. Children need permanency and stability, and forcing them to remain in foster care indefinitely, when Isthere is no hope of reunification, runs afoul of state and federal mandates to further the best interests of the child. State ex rel. J.J.B. v. A.N.B., 45,238 (La. App.2d Cir.03/03/10), 32 So.3d 372. Thus, the trial court did not err in finding that it was in the best interests of the children to terminate Ms. Martin’s parental rights and free them for adoption.

Conclusion

For the foregoing reasons, the judgment of the trial court terminating Jennifer Martin’s parental rights to her minor children, T.J.L.M., J.D.O.M. and D.C.M., is affirmed.

. The court approved case plan set forth the following objectives for Ms. Martin:
A. Ms. Martin will provide adequate supervision and care for her children.
B. Ms. Martin will be emotionally healthy.
C. Ms. Martin will parent her children in an emotionally healthy manner.
D. Ms. Martin will be substance free.
E. Ms. Martin will have adequate shelter.
F. Ms. Martin will cooperate with the agency and work toward a permanent plan for her children.