MOORE, J.
1 TThis appeal results from a judgment terminating the parental rights of the mother, JLM, concerning her infant child, KRM. The judgment also terminated the parental rights of seven possible fathers named by JLM and any additional unnamed biological fathers. Five of the seven named men were excluded by DNA testing. Another man who claimed he was the father was also excluded by DNA testing. The remaining two untested men did not appear after receiving notices of the proceedings. The mother alone appeals the judgment terminating her parental rights. For the reasons stated below, we affirm.
Facts
The Department of Children and Family Services (“Department”) received a report at the time of KRM’s birth on June 6, 2009, that she and her mother, JLM, tested positive for cocaine. The child was born premature at 34 weeks,[1] weighing 4 pounds, 13 ounces. The report was immediately investigated by a child protection worker. JLM admitted to using cocaine and marijuana throughout her pregnancy, even 48 hours before she gave birth.
*53 JLM informed the child protection investigator that she had been using marijuana since age 13 and had progressed to other drugs. She said that she was addicted to cocaine. JLM has prior arrests for possession of crack cocaine with intent to distribute, possession of drug paraphernalia, and violation of probation and parole. She is currently incarcerated, serving a two-year sentence at hard labor for second degree battery. Her anticipated 12release is in the spring of 2012.
Believing that KRM was at substantial risk of harm, on June 11, 2009, the Department requested and obtained an oral Instanter Order to remove KRM from the custody of the mother and place her in the custody of the Department.
On August 17, 2009, KRM was adjudicated a child in need of care and continued in the custody of the Department. The original goal was to reunite KRM with her mother pursuant to several case plans formulated by the Department. The last plan implemented on July 6, 2010, required JLM to:
1. Maintain a home meeting minimum safety and sanitary conditions;
2. cooperate in mental health evaluations and follow recommendations;
3. participate in drug screens;
4. participate in substance abuse assessments and follow recommendations;
5. attend two AA or NA meetings per week;
6. attend parenting classes;
7. visit the child; and
8. keep the case manager informed of her whereabouts.
Although there was some sporadic compliance with the case plan, JLM essentially failed to comply with the case plan, largely caused by her continued drug addiction problems. On November 3, 2010, the Department filed a petition to involuntarily terminate her parental rights.
laTrial commenced on February 14, 2011. At trial, only JLM and Cynthia Wood, KRM’s case manager, testified. No members of JLM’s family appeared at the trial.
At trial, JLM expressed her desire for another chance to comply with a case plan after she is released from jail with the goal of staying sober and providing a stable home environment for KRM. She testified that she completed one in-patient substance abuse program at the Pines,[2] but relapsed after two weeks. She subsequently signed in a program known as “Steps”, where she could stay until a bed became available at the Pines; however, she signed out of that program and never returned to the Pines. She attended parenting classes for a few weeks, but when she missed a class, she was told she must start over and she refused to do so. She said she is now attending parenting class while she is incarcerated.
Regarding visitation with KRM, JLM testified that she did not miss a visitation the whole first year; then she became depressed and visited KRM only two or three times thereafter. She insisted that she apprised Cynthia Wood of her whereabouts at all times.
JLM testified that she has been incarcerated for two months. Since then, she has been attending parenting and anger management classes and is nearing the completion of her GED. She hopes to maintain her sobriety, and wants another chance to be a mother. She promised to cooperate with’ Cynthia Wood and comply with drug test requirements. Once she is released, she plans to live at 114 Moore Cemetery Road in 14Minden, Louisiana.
*54 Cynthia Wood testified that she is a foster care case manager for the Webster Parish Department of Children and Family Services, and she handled the case in connection with KRM. Ms. Wood testified regarding her unsuccessful attempts to locate and identify KRM’s biological father as well as JLM’s compliance, or lack thereof, with the case plan to reunite KRM with her mother, JLM. Although she corroborated much of JLM’s testimony regarding compliance, she testified that JLM did not comply with the case plan by relapsing back into drug use, failing to complete the parenting class, and not apprising her of her whereabouts after the July 6, 2010, visit with KRM until October of 2010. She recommended that the court terminate JLM’s parental rights in the best interest of KRM.
Ms. Wood testified that KRM has resided with Larry and Katie Barrett since June 11, 2009, when she was 5 days old and discharged from the hospital. She said that KRM is doing “excellently,” and the Barretts wish to adopt KRM if she is freed for adoption.
At the conclusion of trial, the case was deemed submitted with respect to JLM’s parental rights, but the matter was continued to hear evidence regarding disposition of the parental rights of the two untested named fathers. After a hearing on March 28, 2011 in which evidence was adduced and arguments made regarding the fathers’ parental rights, the court rendered judgment.
The court found that JLM did not comply with the case plan, particularly finding that there was little or no compliance with the substance | Sabuse portions of the plan, visitation, anger management and parenting as it relates to the plan. It concluded that the physical, mental and emotional well-being of KRM required that JLM’s parental rights be terminated.
JLM perfected a timely appeal.
Discussion
In parental termination proceedings, courts must balance the two private interests of the child and the parents. A parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children. The child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing stable, long-term relationships found in a home with proper parental care. La. Ch. C. art. 1001; State ex rel. J.T., 46,174 (La.App. 2 Cir. 3/02/11), 58 So.3d 1015.
In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. State ex rel. G.J.L., 00-3278 (La.6/29/01), 791 So.2d 80; State ex rel. A.R.H. v. Hines, 35,800 (La.App. 2 Cir. 2/27/02), 810 So.2d 1166. In all proceedings, when a ground justifying termination of parental rights is proven, the primary concern is to secure the best interest of the child. Id. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. Id.
[ (¡Termination of parental rights is a severe and final action, so the state must satisfy an onerous burden of proof, establishing each element of a ground for termination by clear and convincing evidence. La. Ch. C. art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State ex rel. C.M.M. v. T.P.M., 42,238 (La.App. 2 Cir. 5/9/07), 957 So.2d 330. Although La. Ch. C. art. *55 1015 provides several grounds for involuntary termination of parental rights, only one ground must be established. State ex rel. S.N.W. v. Mitchell, 01-2128 (La.11/28/01), 800 So.2d 809; State ex rel. J.T., supra.
The trial court’s factual findings in termination of parental rights cases are subject to the manifest error standard of review. State ex rel. B.H. v. A.H., 42,864 (La.App. 2 Cir. 10/24/07), 968 So.2d 881; State in the Interest of K.L.B. v. Biggs, 29,512 (La.App. 2 Cir. 2/28/97), 690 So.2d 965.
By her appeal, JLM asserts that the trial court’s decision was erroneous and not supported by the evidence, and the judgment terminating her parental rights should be reversed and the case remanded for further proceedings. She contends that she has substantially complied with the case plan while incarcerated, and the best interest dictates that she should be given a chance to comply with a case plan upon her impending release from jail.
Louisiana Children’s Code Article 1015 provides, in pertinent part:
The grounds for termination of parental rights are:
[[Image here]]
17(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
Our review of this record indicates that JLM did not comply with the case plans implemented during the 18-month period after KRM’s birth in which the state had custody of KRM. Had JLM complied with the requirements of the case plan, she would have been eligible to regain custody of KRM. This failure led the state to initiate involuntary termination of parental rights proceedings. Although the record establishes that JLM did complete an in-patient substance abuse program at the Pines, once she left that facility she very quickly returned to drug usage. Her history of heavy drug usage extends back over 10 years, even during pregnancy.
JLM attended parenting classes for a few weeks, but she admitted that she refused to restart the parenting course as required after she missed a session. She complied with the visitation schedule for approximately one year, then abruptly quit visiting KRM for several months and failed to maintain contact with Ms. Wood during that time. Except for the short period she was at the Pines, she apparently continued to use cocaine and other drugs, as evidenced by her emergency room visit to the Minden hospital after apparently overdosing on cocaine, drug screens, and her own testimony regarding re-entry into a substance abuse program.
| sJLM’s argument that she should be given an opportunity to comply with a case plan after her release from jail is thus based on her alleged substantial compliance with the case plan during her incarceration which began one month after termination proceedings had commenced, and her promise to comply after her release. Although we commend these efforts by JLM, we cannot escape the conclusion that her success in maintaining sobriety during incarceration and while she was a patient at the Pines, is likely due, to some degree, to the lack of availability of these drugs *56 during confinement. Hopefully, for her sake, she will be able to maintain her sobriety after her release from jail. Ultimately, however, we cannot make a best interest determination based solely upon JLM’s compliance during incarceration which occurred after termination proceedings had already begun.
The conclusion of the trial court that the best interest of KRM requires that JLM’s parental rights be terminated is substantially supported by the evidence in the record and the findings of the trial court. We therefore conclude that the trial court was not manifestly wrong when it terminated JLM’s parental rights.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.

. JLM testified that she was told that her due date was July 26, 2009, but she believed that this was incorrect, and the child was only a week premature.

. According to JLM, the program at the Pines is a 28-30 days in-patient program.