CARAWAY, J.
| t After the two minor children remained two-and-one-half years in state custody, the trial court terminated the parental rights of the mother. She has appealed the judgment. For the following reasons, we affirm.

Facts

By Instanter Order dated January 28, 2013, one-year-old J.S. (born February 5, 2011) and three-year-old J.C. (born November 4, 2009), were removed from the *807 custody of-their mother,-S.S.,-and placed into the care and custody of the Louisiana Department of Children and Family Services (DCFS),' The investigation revealed that J.C.'reported that the boyfriend of S.S.had thrown J.S. against a wall, breaking his left wrist .and lacerating his head. S.S.did not believe the allegation, instead surmising that J.S. had jumped off of a couch. The children were placed with their maternal grandmother and her boyfriend.
The boys were adjudicated children in need of care on April 18, 2013. A case plan was filed by DCFS with a permanent plan of reunification concurrent with adoption. The case plan required S.S. to attend parenting classes, be available for monthly visits by DCFS, allow two visits in her home to .assure adequate food, clothing and utilities, and receive mental health and substance abuse assessments.
By June of 2013, S.S. had not maintained a home and did not have a job. Her mental health assessment diagnosed S.S.with Cannabis Dependence and Depressive Disorder, for which S.S. was not taking her prescribed medications. Other than two parenting classes, S.S. did not 12attend mental health services or domestic violence counseling. While she attended a substance abuse needs 'assessment on April 26, 2013, she failed to follow up with outpatient substance abuse treatment. S.S.concedes her initial failure in complying with the case plan.
On January 30, 2014, the permanent goal for the boys was changed to adoption. On May 7, 2014, the children were removed from the home of S.S.’s mother after her boyfriend battered her.- The children were placed , into certified foster care. On May 16, -2014, DCFS learned that-S.S. was pregnant, with, her third child, due in. August of 2014.[1] It was at this point that S.S. began to partially comply with her case plan. She completed domestic violence counseling in June of 2014. She consistently visited with her boys, completed a mental health assessment in October of 2014, provided proof of income and employment in November of 2014, and proof of child support payments. In July of 2014, S.S. completed a substance abuse assessment and had a negative drug screen at the end of July.
Nevertheless, on July 30, 2014, DCFS filed a Petition to Terminate Parental Rights[2] on the grounds that- there had been no substantial compliance with a case plan or reasonable expectation of significant improvement for the parent’s condition or conduct under La. Ch.C. art. 1015(5). Partially because of S.S.’s progress in compliance with her plan, the Isoriginal hearing on the motion to terminate parental rights was continued on October 16, 2014, for 45 days[3] to allow S.S. more time.
On October 23, 2014, S.S. tested positive for Amphetamine and Methamphetamine. On November 13, 2014, a hair follicle tested positive for Amphetamine and Opiates; the confirmed drugs in her system were Amphetamine, Hydrocodone, Methamphetamine and Oxycodone. A follow-up drug screen on January 16, 2015, was positive for Amphetamine and Methamphetamine.
*808 In February of 2015, S.S. began attending an Outpatient Day Program for her drug abuse. In March of 2015, S.S. became unemployed. By April 17, 2015, she was recommended for a more intensive outpatient program due to her continued drug use. She began this program on April 20, 2015, attending 12 group sessions between that date and May 12, 2015. Negative drug screens were collected on April 21 and 28. However on May 6, 2015, a urine drug screen tested positive for Methamphetamine. S.S. was then recommended for inpatient treatment with a referral sent to a recovery center. Ultimately, S.S. declined to receive inpatient treatment. As of June 10, 2015, S.S. did not follow up with the recovery center nor participate in a drug screen. By June of 2015, S.S. was living with the father of her third child.
On June 4, 2015, the termination hearing began. The hearing was recessed until July 16, 2015, and completed on August 17, 2015. During these proceedings, Stephanie Marshall, a licensed professional counselor, | ¿testified. In February of 2015, she conducted a drug addiction assessment of S.S.and recommended outpatient day treatment which S.S. attended. Because of positive drug screen results, however, Marshall recommended intensive outpatient treatment for S.S. in April of 2015. S.S.was moved into another program with Eric Brown.
Brown testified that S.S.’s attendance in his program in April 2015 was “good.” However, after three weeks, S.S. got a positive screen. Accordingly, Brown recommended inpatient treatment for S.S. on May 12, 2015. Brown testified that a Methamphetamine addiction can be very difficult to overcome “given its effect on the neurological system and the brain function.” According to Brown, the goal of rehabilitation is to establish abstinence long enough to be successful, and ultimately- total abstinence is desired. He explained that inpatient treatment programs last up to 24 days. Brown followed up on whether S.S. had entered inpatient treatment and learned that she had not. Although she had been cleared for admission, the facility was not able to reach S.S. Ultimately, although S.S. agreed to continue in Brown’s program, she refused to go to what she called “rehab.” Brown’s last face-to-face contact with S.S. was on May 12, 2015.
S.S.testified that she was honest about her drug screens and admitted up front that she would fail her tests. She acknowledged her positive drug screens in early April and May of 2015, and admitted using “Meth” a “few weeks ago,” after the May 6 positive drug screen. S.S. testified that she did not want to go to a recovery facility and stated that “just because you put me | fiaway for 21 days,” does not mean “that I’m just gonna be cured for the rest of my life.”
S.S.testified that she began to use Methamphetamine around Christmas of 2014, through the middle of May 2015. She denied using marijuana at the time of her testimony and had attended four “AA’s since February” of 2015, even though it was recommended that she go more frequently. At the time of her testimony in June of 2015, S.S. was living with her boyfriend, who had gotten out of jail in March. She testified that from August 2014 until May 2015, she had established a residence. She was not employed but worked odd jobs and her mother helped to pay her bills. Her last court-ordered child support payment was in March of 2015. She was able to catch up her payment because of her income tax refund.
S.S.had attended two parenting classes, but conceded her lack of plan compliance in 2013. S.S. admitted her drug problem *809 and refusal to attend inpatient rehabilitation. At. the time of her August 2015 testimony, on the final .hearing date, S.S. indicated that she was willing to attend the inpatient facility and stated her desire to be reunited with her children. S.S. testified that she was employed by a restaurant and worked 40 hours per week since mid-July. .Her child support payments were garnished from her check and indicated her ability to support her children on her salary. S.S. was planning to live in her mother’s house because her mother was moving out of the house she owned. S.S. had moved from her boyfriend’s house in July of 2015 when he went to jail for a battery charge.
|6S.S.’s foster care caseworker, Rosie Owens, testified regarding the requirements of S.S.’s case plan which was reviewed every six months, Owens stated that in May of 2015, she did not know where S.S. was living, although she had since found out that S.S. was living with her mother. S.S. had not maintained consistent employment and was unemployed from March through July 2015. S.S. had not made her child support payments in the two months before Owens’ testimony. Before 2014, S.S. had visited with the children only two times, although from July 2014, S.S. had made her required visits.
Regarding drug use, Owens confirmed S.S.’s. positive drug screens. When Owens spoke with S.S. about her Methamphetamine usage, she told Owens she “could stop and it wasn’t something that she just had to have.” By July of 2015, S.S. refused inpatient treatment. When the last drug screen on June 15, 2015, could not be run, S.S. refused to repeat the process.
In Owens’ opinion, S.S. had not participated in substance abuse treatment, did not provide an adequate home for the boys or verify that she had income sufficient to take care of the children. Owens recommended that they be freed for adoption. At the time of Owens’ testimony, the children were in a foster home since May of 2015. They were four and five years old. The foster parents desired to adopt them. Owens testified that the boys were separated for a while in late 2014. She stated that the children were doing well.
On cross-examination, Owens testified that S.S.’s present living arrangements were physically adequate. She stated that S.S. had consistently |7visited the boys since 2014 and had worked “off and on.” Owens conceded that the boys love their mother and are bonded with her. According to Owens, the older child was concerned about moving again and . sensed a need for stability. He was content with staying with his foster parents.
After the three court hearings in June, July and August of 2015, the trial judge received arguments of counsel and issued oral reasons for judgment as follows:
The main issue that we have is compliance with the substance abuse treatment. ■ That’s the main thing_ I think then if it weren’t for the substance abuse treatment that is needed the other things could be worked out. The bottom line is the children have been in care for about two and a half years now. Despite mom’s testimony today that she made contact on July the 20th with Ray-ville Recovery as we sit here today almost a month later she still hasn’t gone to inpatient treatment. And I disagree with Mr. Adams that inpatient is on the horizon and we have an expectation of completion within a reasonable period in the future. Because last time we were here mom didn’t even admit that she needs Rayville Recovery. She specifically said that she was forced to sign a paper about going to Rayville Recovery. She admitted she had a positive screen *810 and she had used [Mjethamphetamine in mid-May, sometime after May the' 6th.
}|í # ⅜ ⅝ 1 * *
As late as July, she’s telling Ms. Owens she’s not going to submit to a drug sample then. Again, another indication that she is going to have a positive screen. When she was questioned the last time about what she is going to do about her drug problem, her specific testimony was that going to an inpatient treatment for 21 to 24 days is not going to cure her. She said she went to a few AA meetings, maybe four AA meetings at New Freedom» and that information— that was not helpful to, her. Despite the fact that she didn’t want to go to inpatient, she didn’t continue any other substance abuse ■ treatment anywhere. She’s not gone to AA meetings and in fact her testimony last time was that it wasn’t hard to stop using. She could stop any time that she wanted to. That what happened in May was just a "slip up. • And so based on that testimony previously and her actions between now and the last time, well, between the last time we were here and today, the court simply does not find her testimony today that she’s willing to go to inpatient treatment to be credible. It’s clear to the court that if she were willing to do that she would have already done that. It’s clear to the court that the last time she was here she fully understood the seriousness ’of-1 ¿where she was with respect to this case plan. And even though there have been a number of things the mom has completed, the substance abuse issues are really very serious issues: You can’t look at a case plan in terms of each thing on the ease plan carrying equal weight. Part of the reason for instability and some of the other areas like housing and work, income, have to do with mom’s continued substance abuse.- And so under these circumstances I do find, it’s clear that the state has met its burden of proof and it’s clear that'there’s no reasonable'expectation at this point in- time that mom if given some additional time would complete her case plan. I do find that the evidence also establishes that termination of parental rights is in the best interest of these children. - -
The court terminated, the parental rights of S.S. and certified the boys for adoption. This appeal by S.S. followed. .
Discussion
In parental termination proceedings, courts must balance the two private interests of the child and the parents. A parent has a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with his or her children. The child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing stable, long-term relationships found in a home with proper parental care. La. Ch.C. art. 1001; State in Interest of K.R.M., 47,018 (La.App.2d Cir.1/25/12), 86 So.3d 51; State ex rel. J.T., 46,174 (La.App.2d Cir.3/02/11), 58 So.3d 1015. In balancing these interests, the courts of this state ’have consistently found the interest of the child to be paramount over that of the parent. State ex rel. G.J.L., 00-3278 (La.6/29/01), 791 So.2d 80; State in Interest of K.R.M., supra; State ex rel. A.R.H. v. Hines, 35,800 (La.App.2d Cir.2/27/02), 810 So.2d 1166. In all proceedings, when a ground justifying termination of parental rights is proven, the primary concern is tó secure the best interest of the child. Id. InThe focus of an involuntary termination proceeding is not whether the parent should be-deprived of custody, but whether it would be in the best interest of the child *811 for all legal relations with the parents to be severed. Id.
The State has an obligation to make reasonable efforts to'preserve'and to unify the family. If such measures fail, the State is mandated to make reasonable efforts to place a child for adoption or with a legal guardian. La. Ch.C. art. 682; State ex rel. A.T., 06-0501 (La.7/6/06), 936 So.2d 79; State In Interest of B.J., 48,857 (La.App.2d Cir.1/15/14), 135 So.3d 777. Reasonable efforts are defined as the exercise of ordinary diligence and care by department caseworkers and supervisors and shall assume the availability of " a reasonable program of services to children and their families. La. Ch.C. art. 603; State In Interest of B.J., supra.
Termination of parental rights is a severe and final action, so the state must satisfy an onerous burden of proof, establishing each element .of a ground for termination by clear and convincing evidence. La. Ch.C. art. 1035(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State in Interest of K.R.M., supra; State ex rel. C.M.M. v. T.P.M., 42,238 (La.App.2d Cir.5/9/07), 957 So.2d 330. Although La. Ch.C. art. 1015 provides several grounds for involuntary termination of parentai rights, only one ground need be established. State ex rel. S.N.W. v. Mitchell, 01-2128 (La.11/28/01), 800 So.2d 809; State in Interest of K.R.M., supra.
The grounds for termination of the parental-rights in this case are contained in La. Ch.C. art. 1015(5) as follows:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a [incourt order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by . the court as necessary for -the safe return of the child; and despite earlier -intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age. and his need for a safe, stable, and permanent home.
The issue of parental compliance with a , case plan, the parent’s expected success of rehabilitation, and the expectation of significant improvement in the parent’s condition and conduct are questions of fact in a proceeding for termination of parental rights. State in Interest of J.M.L., 47,201 (La.App.2d Cir.4/11/12), 92 So.3d 447; State ex rel. C.M.M. v. T.P.M., supra.
La. Ch.C, art. 1036 states-that lack of parental compliance with a case plan may be evidenced by the parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s -ability to. comply with, the case plan for services, the parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan, and the parent’s lack of substantial improvement in redressing the problems preventing reunification.
Additionally, La. Ch.C. art. 1036 also provides that the issue of lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental, responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
| nQnce a ground for termination has been-established, the court may terminate *812 parental rights upon a finding that termination is in the children’s best interest. La. Ch.C. art. 1039; State in Interest of S.A.T., 49,143 (La.App.2d Cir.5/14/14), 141 So.3d 816; State in Interest of J.M.L., supra; State ex rel. J.W., 46,526 (La.App.2d Cir.06/29/11), 72 So.3d 369.
On appeal, S.S, argues that the trial' court’s determinations 'that DCFS proved by clear and convincing evidence that she did not substantially comply with her case plan and that there is no reasonable expectation of significant improvement in her condition or conduct in the near future are manifestly erroneous and should be reversed. Specifically, S.S. contends that the evidence shows that she has substantially complied with her case plan and that the only thing she has failed to do is complete inpatient rehabilitation treatment for her admitted substance abuse. However, she argues that she has participated in two separate substance abuse treatment programs, attended AA and is now ready to enter inpatient treatment. S.S. also argues that she has demonstrated “significant, substantial indications of reformation,” by fulfilling all but one of the requirements of her case plan. She requests 90 additional days to demonstrate that her substance abuse problems can be “put in remission.”
Underlying the trial court’s ruling is its determination of S.S.’s continued substance abuse and the circumstances indicating addiction surrounding her use of Methamphetamine that undermined the case plan and reunification. Moreover, the length of time between the children’s removal in early 2013 and the trial court’s judgment, while allowing for the Impossibility of S.S.’s treatment and correction of her drug problem, was well beyond the one year of La. Ch.C. art. 1015(5) and therefore had imposed a great detriment to the children’s need for stability and a permanent home. We agree with the trial court’s ruling as the record demonstrates no reasonable expectation of significant improvement in S.S.’s condition involving illicit drugs.
Accordingly, we find no manifest error regarding the facts underlying the trial court’s judgment and adopt its reasoning for termination of the parent’s rights.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed to S.S.
AFFIRMED.

. This third child, five months old at the time, was removed from S.S.’s custody on February 9, 2015, due to a positive drug screen.

. The petition sought to also terminate the parental rights of the boys’ father who eventually surrendered his rights to the state. He was deceased at the time of the final hearing proceedings.

.' Thé' hearing did not occur in December 2014 due to medical reasons of one of the . attorneys. The matter was reset for January 26, 2015, but did not begin until June 4, 2015,